I represent James McKinney and I will reserve three minutes for rebuttal. We are here because Mr. McKinney received an unconstitutional sentence. He received an unconstitutional sentence because the court was precluded from considering relevant mitigating evidence. It was precluded from the court, the trial court was precluded from considering relevant mitigating evidence and also to fully consider the mitigation evidence that was presented. Okay counsel, that wasn't your argument below to the Arizona Supreme Court. Your argument was that the trial court gave insufficient weight to the mitigation evidence, not that any such evidence was excluded from consideration. And that was an Eighth Amendment claim as opposed to the due process claim that you are pressing now under Eddings and Block. We're also pressing under Penry, Your Honor, and in the supplemental request for a rehearing, the appellate counsel did ask for a Penry claim to be considered. Is there also the mitigation memorandum? Where in the record can you point me to where that claim was made to the Arizona court? The Supreme Court or the trial court? Well, either. I mean the question is whether or not you have procedurally defaulted the claim. So with regard to the state trial court, there is a defendant's mitigation memorandum. Is this the supplemental materials that you filed this morning? No. This was actually filed by the state of Arizona, and it is their state exhibit K, filed on October 1, 2012. And in there it says Lockett, Eddings, Cooper. Are you reading from a defense plea or are you reading from the state's plea? The question is did your client, Mr. McKinney, raise the claim? Yes, he raised it in a defendant's mitigation memorandum. So this would have been filed before who, the Superior Court, Judge Sheldon? It was filed before Judge Sheldon, Your Honor. Then on top of that was the information that was filed today. The appellate counsel, Neal Bassett, filed a motion to ask for reconsideration, and in there he cited the case of Motley v. Collins, and in Motley v. Collins he had raised the Henry issue also. He expressly cited Lockett and Eddings, right? He did. And so the state court gave your auditor a fair opportunity to address the federal claim. So then afterwards, to support the findings that it's unconstitutional, the trial court The trial court on July 23rd, without the benefit of a written special verdict, went ahead and conducted its review of the mitigation evidence. When it conducted the mitigation review, it began with the G-1 category, and the G-1 category is a statutory causal nexus test. Then it went on to G-2, G-3, G-4, and then it went on to the catch-all provision, and that is a base stamp number J-A-M-1-1-5-9. And the court said, with respect to the other mitigating factors raised by the defendants in their memorandum, defendants mitigating memorandum received by this court July 15, 1993, I have had an opportunity to review this memorandum. I agree that there was evidence of difficult family history by the defendants, and this is the key word. However, as I have indicated, I do not find there is a substantial mitigating factor. No, no, that is a substantial mitigating factor. I do not find that is a substantial mitigating factor, or that there was any evidence that linked that in any way to demonstrate that, at a later time, coupled either with drugs, alcohol, or a cognitive impairment that somehow significantly impaired the defendant's capacity to understand the wrongfulness of his conduct. This is a paragraph that has linkage. It also uses the word however, and the word however was used by this court in Stires to grant relief to Mr. Stires. When you use the word however, the trial court is saying... Isn't there a disjunctive following the however? There is. So if I parse it correctly, it says, however, it's not sufficient mitigation, or show causation. So why isn't the first prong of that an indication that the trial judge considered it? Because then we have to read later on. It says that somehow significantly impaired the defendant's capacity to understand the wrongfulness of his conduct. Well, you went too far. What is the word right before that? Impairment, cognitive impairment. Cognitive impairment in that? Cognitive impairment... Isn't there an or in there? I'm sorry, your Honor. Maybe I misunderstood. Isn't there an or in there? There is an or talking about the mitigating factor, or that was any evidence that linked. So he says it's not a mitigating factor, and there's no linkage. So he's also saying later on, using both of those criteria, that somehow significantly impaired the defendant's capacity to understand the wrongfulness of his conduct. And then if we read later on, it says... But read later on, counsel. Read the next paragraph with respect to the other matters set out in the memorandum. And the memorandum very clearly sets out both PTSD and childhood abuse without connecting it to the conduct of the crime, does it not? The sentencing memorandum. Yeah. Different paragraphs, different headings, different Roman numerals. The problem is that under the scheme that was set out by the Arizona Supreme Court, the trial judge was prohibited from granting relief unless there was a causal nexus. That's not exactly the statute. The statute says he's got to take into consideration all factors. Then they go into G1, G2, G3, G4, G5. I agree with you, and that's the problem. The statute allowed it. The statute incorporated Lockett. The problem was a judicial gloss put on by the Arizona Supreme Court. And so the Arizona Supreme Court... By this Arizona trial judge, right? We have to assume that the Arizona trial judge followed Arizona state law because he's a state court judge. We cannot assume that he did not follow the law set forth by the Arizona Supreme Court. But as Judge Kaczynski pointed out, the first thing he said is, I do not find that... He's talking about family history. ...is a substantial mitigating factor. Why is that not a finding, that childhood abuse is not a mitigating factor? Are you talking about the G1 factor? JEM 1160, line 1. Then he uses the word or, and he goes back to G1. But the factor of childhood abuse not being a mitigating factor seems to be independently dealt with in that sentence. And at the beginning of the next sentence, when he refers to matters set out in the memorandum. The problem is when we read the second portion on 1160, you have to read the full paragraph. It says that somehow significantly impaired the defendant's capacity to understand the wrongfulness of his conduct. But there's an or that precedes that. So as was pointed out by Judge Kaczynski, isn't that two different findings? No. The finding is that there wasn't a mitigating factor. I'll put it another way. Suppose that the Supreme Court of Arizona did find that there was evidence of independent evaluation of child abuse and PTSD. Do you think that there is a reasonable basis for the Arizona Supreme Court having found that? No. The reason is because it's not sufficient to consider. It must be meaningfully considered. Where is the case that says that it must be meaningfully considered? Abdul-Kabar. Abdul-Kabar. Well, let's even assume the Arizona Supreme Court stated that it and the trial court had considered all the mitigating evidence proper by McKinney. But let's even just go beyond that and say if you're saying that there was a failure to follow clearly established federal law. If we're under AEDPA review in Gleevee-Frost, the Supreme Court reminded us that under AEDPA, state courts need only comply with clearly established federal law. What Supreme Court opinion clearly establishes that a state court's use of an unconstitutional nexus requirement is structural error? If we're under AEDPA review, how do you get over that hurdle? I would submit that it's Abdul-Kabir. Once again, the issue in Abdul-Kabir was we need more than just having a consideration. Does it need to be meaningfully and fully considered? So we have Abdul-Kabir. But you're resting everything on the unconstitutional nexus requirement. If you're saying that that's structural error, what case stands for that? Well, the case that stands for that, Your Honor, is in Abdul-Kabir. They stated that it was fatally flawed. But more importantly than that, if it's not structural, it has to be harmless error. The United States Supreme Court has never held that harmless error test is applicable to a pending claim. And in this particular case, especially so, because in State v. Ross, this Arizona Supreme Court stated- Well, if they haven't held it structural error, then it's subject to harmless error analysis, right? The United States Supreme Court has never held that a pending claim is subject to harmless error. Have they ever said it was subject to structural error? That's what you have to show is clearly established. I mean, you're flipping that on me. What they have held is that there has to be a relevant test. If it's relevant, then all the cases that have come out regarding these pending claims have been reversed on the basis of relevance. That is the test. It's a very low-threshold test that's applied. But in this particular case, Your Honor, let me tell you why I think that structural is applicable for this particular case. In State v. Ross, the court says that it's not relevant. The issue of family history is not relevant. It relies upon a case of Wallace. In Wallace, it says, well, we can't have people coming up here and talking about family history as mitigation because everybody would do that. When the Arizona Supreme Court does that, it deprives my client, other clients, of the opportunity for an individualized consideration. It deprives them of the opportunity to have a moral response. So what happens next is the trial courts follow the Arizona law. That's a structural error because it happened outside of the trial setting. Then it goes on for appellate review. The appellate court reviews it with the wrong standard. They set the wrong standard for the trial courts. They then go on the appeal. We have a wrong standard that's being used by the Arizona Supreme Court for the review. Counsel, if that's right, then explain to me the meaning of the paragraph at page 1160. After the trial court addresses the nexus issue, starting at line 7, he then goes on, with respect to the other matters set out in the memorandum, referring to the defense sentencing memorandum, I have considered them at length and after considering all of the mitigating circumstances. The mitigating evidence that was presented by the defense in this case is against the aggravating circumstances. As I understand it, that was a three-day evidentiary hearing at which all this family testimony came in. He then outlines the aggravating factors and concludes at line 20 that the mitigating circumstances simply are not sufficiently substantial to call for a leniency under all of the facts of this case. Isn't he weighing all of that mitigation evidence, whether it's a statutory mitigator or a non-statutory mitigating evidence, against the aggravating factors that he heard? No. And the reason is, as very eloquently set forth in Judge Thomas' dissent in Poison, is that when there is a screen, when you preclude relevant information from coming in, it's no longer a weighing situation. That relevant information was precluded. The relevant information that was precluded from full consideration was the difficult background. The judge was not able to give it full effect. In this paragraph, you do not see the words that I have given it meaningful effect. You're seeing it being considered. And in Abdul-Kabar, that's exactly what the Supreme Court said was not enough. But the Supreme Court has never told us how the jury is to weigh it. It is simply to consider it and make a determination as to whether mitigation outweighs aggravation. Isn't that what the court says it is doing before it pronounces a sentence? Not in this particular case because what's missing is the second portion, the Penry portion is missing. They're not giving it full and meaningful effect because of a screening mechanism set up by the Arizona Supreme Court. How is that different from simply saying, I've listened to all this evidence, but I'm not convinced. You haven't satisfied me that it's strong enough to outweigh the aggravating evidence that I heard. So in this particular case, it says it's considered other matters. So in the mitigation memorandum, the lawyer said, please write a written special verdict because that's required. He considered it because he read it, but that didn't mean he gave effect to it. That's another example of the difference between consideration and giving effect. Well, let's assume that he'd taken this paragraph and put it in the form of a written order. Would that have been sufficient to meet your objection? No, because there was the ruling from the Arizona Supreme Court, the law that says that difficult family history is not a mitigating factor unless it is tied to the crime. Let me ask you this, if I may. Given that Wallace was on the books at the time of the sentencing hearing, and then in between the time of the sentence being imposed, and then the Supreme Court of Arizona deciding we get Ross, the law in Arizona, as announced by the Arizona Supreme Court, was very clear that unless there was a connection between childhood or whatever it was and the crime, it was not to be considered. Given that Wallace was already on the books at the time of sentencing, did the defendant hold back on presenting any mitigating evidence with respect to childhood or anything else, given the limitation that Wallace imposed? I don't think they held back factual information, but I think they held back legal information. And that's what comes into the play of the structural. So now you've got lawyers that are handcuffed. You've got judges that are handcuffed. They're operating with their hand tied behind their back. And even in the mitigation memo, it actually points to that fact that we know that there was Arizona Supreme Court law that says that you can't consider stuff unless there is a causal connection. But the lawyers were trying to make their record, but because of what happened with the rulings by the Arizona Supreme Court to file the United States Supreme Court law, that plays into the structural error argument. In addition to that, the Rule 32 counsel, you'll also see it there. The Rule 32 counsel, they didn't make that argument very clearly, and I believe it's because the law was so clear in Arizona about the requirement of a causal nexus test. Well, Ross and Wallace are pretty clear. My question went to whether it had any impact on the evidence that the defendant presented at the sentencing phase with the factual evidence. There could be more out there, but every court that's reviewed the factual evidence here has said it is horrific. It's extraordinary. So under a structural or a harmless error standard, Mr. McKinney is entitled to release. You know, as a practical matter, yes, the factual, he had a horrible factual. He had a horrible life, but he committed some really horrible crimes, too. And so when you consider the mitigating and the aggravating, it can't be a causal nexus, but that is the backdrop. That is the reality of all of that when juries are looking at it or when courts are looking at it. So in a way, I mean, you cannot escape the facts of the case, which are terribly aggravating. So to say that there's only one way that you can look, and a lot of times the facts of a childhood are bad and way juries can look at them in a way that's saying, yeah, their life is so bad and they're so far gone that they give them the death penalty sometimes. I mean, they don't, facts don't only cut one way. They also give them life sentence. They give them life sentence because there's an opportunity to spare the person's life. Well, I mean, we've all, you know, many of us have seen a lot of these verdicts, and so bad facts in a bad childhood don't always cut, don't always result in an LWOP. Your Honor is correct. However, in Arizona, in the sentencing memorandum, the trial lawyers I think did a really good job by pointing out on page 2 to 26 of the mitigation memorandum where there have been double homicides where the defendant has received a life sentence. Well, there have been more than double homicides. There have been drive-by shootings that, you know, that receive life without possibility of parole. It's all the factual circumstances in a particular case. And I mean, sometimes there's only one, you know, there's only one homicide, but it's a child and it's a rape case, and juries don't like those very much despite having a bad childhood. I'm sorry. Answer Judge Callahan's question. Your Honor, that's true. But for there to be a proper and a constitutional sentence. What I'm basically saying is you can have a very bad childhood and that the automatic result is not necessarily life without possibility of parole. Yes. But when there is a sentencing by the state where you're trying to take a man's life and execute him, you have to have a proper framework for it to operate under. It's not, it doesn't, it cannot operate without a framework. I understand. Why don't you go to Judge Wardlaw. Anyway, this is a question for both sides. And I haven't, it just occurred to me today. So there's probably a logical answer to it. But this is a pre-ring case, and so the sentence was imposed by the judge alone, and we now know that that's unconstitutional. I'm just wondering, if we were to agree with you and then find either structural or error or actual prejudice under Brecht, which I think might be the correct standard, and send it back for resentencing, would he then be resentenced before a jury now that we've had ring? Yes. And the reason is because at that point his conviction would not be final and he would be entitled to the new sentencing scheme. Counsel, may I ask you a question? If I grasp your point, you're saying that regardless what the sentencing memorandum argued about Lockett and Eddings requiring mitigation evidence to be considered without a nexus requirement, and that was page 1 through 11 of the sentencing memorandum, regardless what Judge Sheldon said on the record as far as having considered the portions of the memorandum separately, regardless of that, he didn't indeed consider mitigation evidence without a nexus because of the Arizona Supreme Court case. Is that what you're saying? That's what I'm saying. Okay, thank you. And I just want to make it clear that the requirement under Lockett-Eddings-Penry is that there must not just be consideration. There must be full and meaningful effect given, and that is the Abdul Kabir case, and there was a companion case. By effect, you mean he has to win on mitigation? I'm not saying that at all. No, because as a matter of fact, in your reply brief in the Supreme Court of Arizona, you sort of conceded that the trial judge had indeed weighed the evidence, but not sufficiently. Your Honor, I think that's a fair statement. What was insufficient about his weighing it? What do you know that went on in his mind that we don't know or may not know that was insufficient about weighing it? That he is presumed to follow the Supreme Court law of his case. There's nothing about the facts of what he said or what he saw, but you presume that if he followed the Arizona law, he didn't follow the United States Supreme Court law. Based upon the passage I read from you, based upon Ross, and based upon how this is evaluated by the lawyers involved, everyone knew what the law was. Everyone is working within that framework. When did you say it was the first time he presented the Evans claim to the state courts? He did it on July 15, 1993. On what occasion? That was what, the sentencing memorandum? That was the sentencing memorandum, yes, Your Honor. He didn't then appeal that on Evans' grounds to the Arizona Supreme Court, right? The appeal, I will concede the appeal brief could have been much better. However, the appellate counsel was operating within that framework. I'm not going to argue my excuses. I'm asking your position on whether he did or did not. If you're going to argue to me he did, that's fine. If you say he didn't, that's fine, too. I'd just like to know what your position is. He argued it in the direct appeal, and then in the... You take the position he did argue it, that is fine. He allotted the claim you're making here, and that is that the trial judge was precluded from considering mitigation evidence unless it was causal. I am, Your Honor. That argument was made on appeal to the Arizona Supreme Court in your view. It was when you consider the direct appeal and the motion for reconsideration. Absolutely, I think it's... But there's nothing in the opening brief of the direct appeal that addresses that issue, is there? Your Honor, the court... Yes. The answer is yes, there's nothing in my opening brief. No, yes, there was. And he has made reference to the Eighth Amendment, and he is talking about the fact that a bad childhood alone should entitle him to release. Which has nothing to do with weighing. That's just a straight Eighth Amendment, cruel and unusual. You can't execute him because of his abusive childhood. And in this particular case, we're saying there is no weighing because of the law as applied. But that's the argument that he made was an Eighth Amendment claim. In other words, I should be excused from doing this because of my abusive childhood without regard to any weighing at all. Right? He did, and then... In the opening brief. Yes. And I'm specifically J.E.M. 1310, where he disclaims any weighing argument. And then he talks about the causal nexus when he does the motion for reconsideration. He talks about Henry. Isn't it law of the case that he exhausted? Didn't the district court in this case find that he had exhausted, and didn't the panel of this three-judge panel find that he had exhausted that claim? He had. The court did find that. And then there's no doubt that the Supreme Court had a fair opportunity to address the federal claim. I see my time's almost up. Thank you, counsel. Thank you.  May it please the court. My name is Michael Burke, and I'm appearing on behalf of the federal public defender for the District of Arizona, as amicus, and I wish to thank the court for allowing us to participate in oral argument today. With the court's permission, I would like to first address the questions raised by Judge Fletcher and Judge Callahan. Judge Fletcher, you asked Mr. Matthew if there was any evidence that was withheld in this case. And I am not a member of the McKinney team, but I would say that the most truthful answer to that is that we cannot know, because Arizona was operating under a system in which a causal nexus existed. And that system was so well-known that it very likely permeated all the way down into the trial lawyer's investigation of information. If a trial defense lawyer has limited resources and knows that the Arizona Supreme Court has repeatedly held that evidence of a difficult childhood or mental illness is only entitled to mitigating weight if there is a causal nexus, they're likely not to expend resources in investigating that. So we, truthfully, I would say, cannot know, which is one reason why the errors that we are addressing in this case are, we submit, are structural errors. And Judge Callahan, you mentioned the most recent decision from the Supreme Court in Gleeve. I would submit that Gleeve did not control here for a very specific reason. 2254D is the provision that requires a clearly established federal law. And if I understand correctly, you asked Mr. Matthew, what is the clearly established federal law that says that this is structural error? There is a distinction here, though, because the Arizona courts, not in Mr. McKinney's case or in any of the cases, ever found Edding's error. They were committing Edding's error. So they never reached the question of whether that error was harmless or structural. That has never been adjudicated by the state court. As a result, 2254D1 is inapplicable here. If this court were to determine that the Arizona courts violated clearly established federal law with regard to Edding's and Lockett, this court would then on its own have to determine whether that error is structural or harmless. Mr. Burke, you would concede, would you not, that there is a line of Supreme Court case law that says that the lack of a causal nexus is a factor that can be considered in determining what weight to give mitigating evidence? A line of United States Supreme Court cases that say that or Arizona cases? I think it's U.S. Supreme Court cases. The court has never told us how the finder of fact is to quantify that. That's absolutely correct, Your Honor. Although it would not be improper in trying to determine what, if any, weight to give non-statutory mitigation evidence, the fact finder asked whether or not it could be tied in some way to the crime. That would not be improper at all. It's certainly something that would be recognized by the Eighth Amendment. The distinction that we have here, though, is the reverse, and that is that the sentencers, the trial judges in this case, they were prohibited from exercising their unfettered discretion to decide whether in any individual case this evidence of difficult childhood background or mental illness, in fact, was... There were prohibitions? There were, Your Honor. They had been told repeatedly that unless that evidence bore causal connection to the facts of the crime, that evidence was, depending on which case you want to cite, not a mitigating factor, entitled to little... That doesn't sound like prohibited. That means permitted. You don't have to consider it because it's not a mitigating factor. What do you cite for the proposition in the Arizona Supreme Court? You commit the error if you consider it. Is there such a case where a trial judge was considered and was chastised for that? At most, I think you can say that looking at the rulings of the Arizona Supreme Court, a trial judge would feel free not to consider it. Can you say more than that? Yes, I think you can, Your Honor. Prohibited? Yes, Your Honor. Do you have a citation for that? I would cite beginning with State v. Wallace and working... I'm referring to Arizona Supreme Court cases, Your Honor. Yes, well, of course. What else would you be looking at? Well, beginning with State v. Wallace and working down through... Instead of starting someplace, why don't you give me the best case you have for that? State v. Hoskins, Your Honor. Hoskins? Yes, it's a 2000 case in which they were told repeatedly that evidence lacking a causal nexus was not mitigating, and only once the causal nexus was established... Where does it say you can't consider it, even if it's not mitigating? It's one thing to say, look, if this is not mitigating, the district judge is not authoring to consider it. It's quite different to say the district judge might... I'm sorry, the Superior Court judge may not consider it, but that's really quite a bit more. I'm sorry. What is the context that would have said that? The United States Supreme Court has said that the sentencer must have freedom to determine for him or herself what weight mitigating evidence should have. And when the highest court of the state is telling the trial judges who are sentencing that as a matter of law, certain types of evidence is only entitled to minimal weight, that restricts the individual sentencer's freedom to make that determination in the individual case. How? How? How? It is presumed... You say the state Supreme Court may think it has minimal weight, but I will consider it. I don't get it. I think you just overstated the case, that's the best I can tell. If Mosley had the freedom not to consider it, they would not prohibit him from considering it. Would they get a reverse to the consideration? They were saying that they had the freedom not to consider it. Well, I would say it more strongly than that. I was reading from Ross. This is the Arizona Supreme Court. A difficult family background is not a relevant mitigating circumstance, unless a defendant can show that something in background has an effect or impact on the behavior beyond the defendant's control. It says it's not a relevant mitigating circumstance. Bingo. There it is. It's not relevant. And they were lawless, which was the law at the time of the sentencing. And I would agree. And I would say that the judges who were imposing these sentences were obligated to follow... So Ross was a case where the government appealed the failure to impose a death sentence? Is that what it was? No, Your Honor. Can't do it, right? But what they were saying, they were answering the defendant's argument, saying that should have been considered, and said it's not a relevant circumstance. I think I understand your point. There's no case that says it's error to consider it. No error to consider. Yes. Even though it may not be causal. There's no such case. No. In fact, that's what the Eighth Amendment says. You certainly may be free to consider. But Arizona has never said it's error to consider it. The most they've said, the state Supreme Court has said, is it's okay not to consider it. That is correct, Your Honor. And I suppose if I understand your argument, then... It's a question. Excuse me, it's a question. It's a question. Had a judge decided, I, in this particular case, feel that in this instance, it merits... Consideration, even though it's not causal. Right. That is not something that the case... Would you have been sort of kicked out of the judges club? Very likely. Yeah? All right, Your Honor. A harsher place than that, I guess. And if I may, Judge Wardlaw, your question about what happens in these cases, Mr. Matthews is spot on with regard to that. Once a court issues a writ of habeas corpus, the case is no longer final. There are cases that stand for that proposition, and they include Jimenez v. Quarterman from the United States Supreme Court and Magwood v. Patterson, which state that once the writ issues, a conviction is no longer final, and once it's no longer final, then they would be entitled to sentencing by a jury under Arizona Supreme Law. Yes? Your Honor, may I do you want to reserve a little bit of time? Oh, is that permissible? Yes, it is. Thank you, Your Honor. May it please the Court. My name is Jeff Sick, and I represent Respondent Appley. Speak up, would you please? May it please the Court. My name is Jeff Sick, and I represent the Respondent Appley in this matter. Getting to Judge Tallman's first question regarding the fair presentation, below we argued that this was not fairly presented, this claim, and it was procedurally defaulted. The district court didn't agree with that, and we accepted the district court's decision that the state court actually determined the merits of this claim, and the claim was thus exhausted. So we don't raise that issue here today. So our position... So you accepted it. You didn't appeal it, right? Correct. Yes, it wasn't before us on appeal. Correct. As an issue. That's correct. And we accepted the district court's ruling. That's correct. So you're voluntarily waiving the exhaustion issue? No, we're not waiving exhaustion. We're saying that the district court determined the issue, and we believe that we've accepted that. We haven't appealed that issue, and we're not... So is it law of the case? Very much, I guess it is law of the case at this point, because we didn't appeal that issue. We believe it is exhausted. We believe that the state court did have a merits determination on the issue, and the district court was correct in finding that there was a merits determination on this issue. And in that regard, at sentencing, defense counsel did present this issue to the trial court. He cited to Lockett and Eddings in several places in the sentencing memorandum, which is Exhibit H, at Pages 2, 4, 5, and 9. And although it was in the motion for reconsideration, appellate counsel for McKinney did raise this, the issue of whether the trial court properly considered his mitigation. So it is an exhausted issue at this point. Our position on the merits of the claim are essentially mirroring the panel decision. We don't believe there was any error, any constitutional error in the sentencing in this case. At the time, it's been argued that Arizona had a causal nexus test that was employed in its capital sentencing. But there are cases out there that talk about the Arizona Supreme Court not using a causal nexus test and actually giving some fidelity to Lockett and Eddings. Let me ask you this. As I understand the Arizona sentencing scheme at the time it existed pre-ring, the trial judge would impose the sentence, and then the Supreme Court would review the sentence de novo. Is that correct? That's what I read when I read the Supreme Court's opinion, for example, in this very case. It says we reviewed de novo the sentencing determination made. That's correct. They had a statute that called for independent review. So do we review what the sentencing judge did? Do we review what the Supreme Court did? And that's a very good question, Judge Fletcher. I think in this case, the last reason decision is the Arizona Supreme Court decision. But to the extent that the Arizona Supreme Court adopted the trial court decision, I think you can look to the trial court to determine whether the mitigation was actually considered or properly considered. Yes. As I read the Arizona Supreme Court decision, and it decided both Hedlund and McKinney at the same time, so for the moment I'm only going to refer to what the Arizona Supreme Court wrote in deciding the McKinney appeal, which is the one in fact immediately in front of us. The Supreme Court writes, and I'm now on page among specific reporters, the reporter I'm using, 1234, the very end of the opinion just before you get to Judge Martone. It's almost the last, second to the last paragraph before you get to this position. And I'm toward the bottom of that first column. As we noted in discussing Hedlund's claim on this same issue, a difficult family background including childhood abuse does not necessarily have substantial mitigating weight. Advocates are showing that it significantly affected or impacted the defense's ability to perceive, comprehend, or control its actions. See state via Ross with a jump site. And the jump site to the page on Ross is the language that I just read, which is to say it's irrelevant unless you've got the causal nexus. And then the Arizona Supreme Court writes, the record clearly shows that the judge considered McKinney's abusive childhood and its impact on his behavior and ability to form his conduct, and it found it insufficiently mitigating the call for leniency. As I read that, once I've got the jump site to Ross, which says it is irrelevant, I read the Supreme Court of Arizona saying there was no causal connection made and it's irrelevant. How am I misreading that? Let me try to convince you that that is somewhat of a misreading of what's going on. So when you look at the language, it says, as we noted in Hedlund's claims, a difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight. The Arizona Supreme Court is putting weight into that mitigating factor. It's not saying because it doesn't have a connection, it's precluded. It's not saying that we're not going to consider it. It's actually putting weight on that mitigating factor. Let me read you back then to Hedlund, because as we said in Hedlund, so I'm now back in the earlier part of the opinion with respect to Hedlund, on page 1226, running over to 1227. So I'm at the bottom of the second column on 1226. Tell me when you're with me. I'm there. Okay. About six lines up, I'm beginning. The judge, the sentencing judge in Hedlund, the judge specifically found that Hedlund was abused as a child, but that the latest episodes of abuse occurred 10 to 11 years before the crime, and that there was no evidence of a causal relationship between the abuse and the murders. A difficult family background, and that's the same language as later, and with the same jump site to Ross. And then at the end of that paragraph, I'm now over on the top of 1227, the first paragraph in the first column, no such evidence was offered, and the judge did not err in concluding that Hedlund's family background was not sufficiently mitigating to require a life sentence. And I went back to Hedlund because, as you accurately said, the court in discussing McKinney says, as we noted in Hedlund. Right. And obviously this is a poor way to construct this type of opinion. And I think in this case. You didn't write it and I didn't write it, so, I mean, we're stuck with what we have. We got what we got. Right. We're stuck with what we have, but what I can, you know, what I would. I guess the argument that we want to make, and we will make here, is that you have to look at this language, okay? And I understand you're jumping back into Hedlund's actual independent review, but in McKinney's review, it does indicate that it didn't give it substantial mitigating weight. It didn't preclude it and it didn't find it not relevant. And the citation to Ross, although it is a jump site and it's to that language that is constitutionally suspect. No, it's constitutionally wrong. Right. I mean, it is a wrong statement that one sentence is, yes. But this may clarify Ross in the fact that it's not following Ross and saying it's not relevant. It's saying that it's not giving it substantial mitigating weight. And if you look at some of the cases, and you can go back to the beginning when Lockett came out, just several weeks after Lockett came out, Arizona changed its statute to comply with the Lockett decision. And then after Eddings came out, the Arizona Supreme Court cited it in State v. Mercury. I'm sorry, did it actually change the language in the statute or did the court start interpreting it differently? It changed the language of the statute. State legislature changed the language? Correct. In State v. Watson, you can find that. And I think we cited that in our response to the amicus brief. But in McMurtry, it also cited Eddings and said this is what trial courts are to do in our state. Two years before this trial appeal in State v. Gallegos, the Arizona Supreme Court reversed a sentence and sent it, remanded it back for resentencing. And in that opinion, and we cited that at page nine of our response to the amicus, in that opinion it laid out a road map for the trial courts to use in looking at non-statutory mitigation. Because in that case, the difference was it considered it as statutory mitigation, didn't find it relevant or didn't find it mitigating, but didn't say anything about looking at it as non-statutory mitigation. So it laid out a road map and in that it cited to Lockett the Lockett decision and told the trial courts you have to consider non-statutory mitigation when it's presented. Just don't stop at statutory. I'm wondering, how do we know whether the trial judge excluded the evidence of post-traumatic stress disorder from this analysis or considered that PTSD but gave it little weight? How do we know that? Well, it's in the sentencing transcript. It's in the special verdict. And you can go back before the special verdict because at the end of the evidentiary hearing, the trial court informed defense counsel that he was thinking that I'm going to find abuse, I'm going to find that he grew up in a severe situation, and I also am convinced that there is some demonstration of the causal factors of post-traumatic stress disorder. That's in the transcript July 20th of 1993. What do we look at? I thought in response to Judge Fletcher you seemed to consider, and I don't want to, just a concession if you didn't mean to make it, I just understood it that way, that we only look at the Supreme Court opinion, that if I answer the question, they do a re-weighing. So it's not really a review of what the trial judge did. They actually are the ones who make the decision, and we look at the opinion of the Supreme Court. Now, in response to Judge Callahan's question, we were talking about the decision of the trial judge, but if my understanding of your answer to Judge Fletcher is correct, what happened to the trial judge is irrelevant. Is that the state's position? No, and maybe I misspoke before. Maybe I misunderstood. I'm trying to understand your position, so don't feel bound by what you said earlier. Go ahead and explain. What do we look at? What are we reviewing? What the Superior Court judge did or what the Arizona Supreme Court did? I think you can look at both, and what you typically look at is a last reason decision, which in this case would be the Arizona Supreme Court. But if the Arizona Supreme Court does rely or adopt, essentially, what the trial court did, I think you had to look at both. Okay, what happened here? Did it adopt? I mean, is the function of the Supreme Court to re-weigh in every case? In independent review? Yeah. Yes, it is. But this case was a little different. If you remember, because the issue that was raised on direct appeal was an Eighth Amendment claim that the child abuse caused him to commit this murder. I think in this case, in McKinney, it's a little different than the other independent review cases that you've probably seen. Because, like Judge Fletcher found, the Hedlund, if you look at the opinion, the Hedlund independent review is broken out differently, and some of that is because they found an aggravating factor wasn't sufficient. But in this case, they looked at whether the trial court actually considered. So they're looking at the trial court record, and to understand whether that's a reasonable decision, you can look to the trial court record to determine that. So, for example, you can find under D2, 2254 D2, if there's an unreasonable determination of facts, which I think Judge Wardlaw found in her dissent, you have to look at the trial court and what it did with respect to considering the mitigation. But in that respect, I think, I don't know if I made myself clear to the question. No, no. Okay. But you would say, in terms of the reweighing that the Arizona Supreme Court does, it's bound by the record. It does not consider new evidence. No, it does not consider new evidence. So, for example, hypothetically, if counsel had decided not to put on mitigation evidence because it was relying, counsel was relying on Wallace saying, I can't, that's not relevant or it's excluded, that would not be considered in the reweighing. No, actually, that's not true. The Arizona Supreme Court can look at the entire record and can determine whether there's... If it's made. That was one hypothetical. If counsel did not put any evidence on, how could the Supreme Court consider evidence that's not part of the record? Well, if it's not part of the record. But they do search the record for mitigation and aggravation. So, there is a difference. Right. But the whole point is, if counsel, and it didn't happen in this case, but if counsel had felt, because of Wallace, that he was precluded from putting in mitigation evidence as the family background at the time, that simply would not be part of the weighing in any circumstance, either the trial court or the Arizona Supreme Court. Correct. If it's not part of the record, it wouldn't be part of the weighing. But, as you state, that didn't happen in this case. There was nothing precluding McKinney's counsel from presenting that information to the family. And that's the interesting question, following up what Judge Kaczynski asked earlier. What was the effect of Wallace? When Wallace says, the Wallace court says, this is not mitigating evidence, how can a trial court consider that as mitigating evidence? Well, the trial court can consider anything as mitigation. But what says that in Wallace? Well, Wallace is a different case. I think we cited the whole passage in that case in our response to the amicus. You can take snippets of the language from that decision and say, yes, it's constitutionally wrong. If you say it's not relevant, but then if you actually analyze it, you're actually giving it consideration. So, trial courts aren't, there was nothing precluding trial courts at this time from considering mitigation. And in this case, even if you just look at the Arizona Supreme Court decision, you can determine that it was weighing his mitigation. It was weighing the child abuse and the post-traumatic stress disorder and not finding it substantially mitigating. So, that indicates that the Arizona Supreme Court, in its independent review, in looking at what the trial court did, found that there was weight to it. It just wasn't substantial. So, I just really want to be clear on this because I'm not sure it actually came up in front of the three-judge panel. I don't recall, because I know that the way that we wrote the majority dissent, we're focused on the trial judge. But now I'm thinking maybe our focus was incorrect, that we should have been. So, I mean, I both described what the Supreme Court did, too. But now I'm thinking that we should have been exclusively focused on the last-reason decision of the Supreme Court. It didn't seem to me that you argued it that way last time. No, I don't think that issue actually came up. Is that because – I'm sorry, I don't want to cut you off, but I want to understand. Is that because of how we are supposed to conduct ADFA review, that that's the decision that we look at? That's correct. You look at the last-reason state court decision. But there are cases out there, and I want to say it's Barker v. Fleming, but I'm not actually sure. That state, if that last-reason state court decision adopts the position that you can look through to what actually occurred. And it only makes sense in this case when you have an independent review of an appellate court looking at what the trial court actually did. Did it adopt it here? It did. It found that the trial court, the record clearly shows that the judge considered, so it adopted that finding. We'll have to look at that case and see. Yeah, I'm not sure if it's that case. I know there's a case out there, and I can file a 28-J letter with that. Do you want to speak to Harmless Air? Harmless Air, yes. I mean, I don't know about further questions on this topic or something else, but at some point I'd like you to talk about Harmless Air. I can do that now. Well, maybe, too, you can sort of expand, because I understand the Federal Public Defender's arguing that in both settings and Lockett, the Supreme Court reversed and remanded without analyzing for Harmless Air, and thus implicitly held that the error was structural. So when you're talking about that, what's your response to that argument, too? Well, they've also implicitly held that this type of error is subject to Harmless Air in Hitchcock v. Duggins and Skipper v. South Carolina. So they've never clearly held that this type of error is structural error. With respect to whether it's structural error, I think in this instance, when you're reviewing- So you're kind of going there if we don't agree with you on the first prong. The second prong in AEDPA, you're saying it's not clearly established. That's correct. They've never held that this type of error is structural error. So in an AEDPA review, you can't find that this is structural error. This would be subject to brecht error. Well, I guess it's a question of what the presumption is. I mean, they've also never held that it's subject to Harmless Air review. So there's no clearly established law either way. Either way. That's correct. So what do we do with that? There's no- If that's the position, what do you do with that? Then you have to- Because your review is under the statute- But the state court didn't do a Harmless Air analysis here. Well, they don't do. They do an independent review, which is the de novo review. So I think what you have to look at is this is a case governed by the AEDPA. You have to follow clearly established law. So this has never been found to be structural error. You have to find it under brecht. Let me just make sure I understand. This is not a case where the state court said this is not structural error. This is subject to Harmless Air review. And so we're faced with a situation as they hold this is subject to Harmless Air review. We look at the universal Supreme Court cases and say there's no clear expression of the contrary. It must refer to them. That's not the case. In this case, there was simply no state ruling on whether there is or whether Harmless Air applies or not, right? Because the state court didn't find error. Because there was no error, correct. Well- And if there was- Maybe there was. The important point is it didn't find error, so it had no occasion to rule on the question of whether it's structural or not structural. That's correct. So in that situation, don't we rule on that if you don't know? Well, I think- There's nothing to be trusted, is there? There is no decision on that particular issue. But in order to give- So if you win on something else, you sort of can borrow from that, you know, deference from that issue? No, that's not what I'm saying. What are you saying? I'm saying that your review is under the ADPA. You can't give relief unless there's Brecht error. I don't think anybody disagrees with that. And that's our position, that you would have to look at- Actually, so it falls under the normal Brecht standard, is what you're saying? That's correct. That's what I'm saying. And even if you look at structural error, the type- And for that, we have to find a clearly established Supreme Court opinion. Correct. To overcome the Brecht standard. Correct. I mean, basically, we're back in the same situation we were in, in Glee versus Frost, right? Correct. We wanted to declare structural error. The Washington Supreme Court had said, no, this is subject to harmless error review. And the Supreme Court said, we've never opined on that. So under ADPA, we can't say that the Washington Supreme Court was wrong. That's correct. But here, the court has no opinion on it. That's a big difference. That's the difference we've been discussing. But you're still governed by the ADPA in looking at this case. Maybe so, but this is not like- I mean, you agree with Judge Talman. He should have said, no, Judge Talman, that's not the way it is. Because in that case, the state Supreme Court had ruled on the harmlessness issue.  It did not rule on- I mean, I know disagreeing with Judge Talman is a scary proposition. I thought we were doing it as much as I can. But that's, in fact, a difference, right? It is a difference. That particular specific issue wasn't before the state courts. But even if you have that position and you look at whether this is structural error or harmless error, one, you still have to contend with the fact that the Supreme Court has never held that it's structural. What did the Supreme Court do in Lockett and in Eddings when it found that the causal nexus test was violated? It did send the cases back, but the issue of whether it was harmless or structural wasn't even before the courts. It didn't talk about the issue, but what did it actually do? It actually reversed. Correct. It reversed, right? Correct. So isn't that implicitly saying- I mean, it didn't talk about whether it was harmless either, but isn't that implicitly saying that it's structural, that they're just going to- once they find the error, they automatically reverse? I don't think you can say that because the issue wasn't before the court. I think you can look at the reverse. Before which court? Before the Supreme Court. Yeah, but if they were going- if they thought it was harmless, then they would have talked about the question of harmlessness. If your position is that it's structural, you don't have to discuss that. You can just reverse and send it back, and that's what they did. A lot of times the Supreme Court won't answer questions unless they're specifically before them, and I think in those two instances, that's the case. But you can also look at an inference from Hitchcock v. Duggar and Skipper v. South Carolina to show that it would be amenable to harmless error review based on the statements of the court in those two cases. So you're still at the position that they have never held that it's structural error, and even if you determine that you're not bound by clearly established law under the ADPA, you still have to look at the type of cases that are structural error cases, and the Supreme Court has jealously guarded the rare type of case that is structural. So the type of structural error you see is error that infects the entire process, the entire criminal process, or the whole criminal process. They've always said that. This is one aspect of a criminal trial. This is not- it doesn't affect the whole trial, and it's amenable to harmless error review because you can take the error, the preclusion of evidence, and look to see whether it would have a substantial and injurious effect on the verdict itself. So here you have the circumstance where everyone concedes there was a horrific childhood, et cetera. Why wouldn't the error necessarily be harmful if we concluded that in fact there was an headaches violation? Well, this court is free to determine whether it's harmful. The Supreme Court in Satterwhite did the same on the unconstitutional admission of evidence in a capital sentencing. So you're free to do that, but you can look at that evidence and determine that, like the trial court did here. It looked at the mitigation that McKinney presented, and it analyzed it against the facts of the case to determine whether it would have made a difference. But reweighing had an effect. Yeah, reweighing is different from considering whether or not there was reversible error. Well, I think you can look at the Sixth Circuit case, Dixon v. Houck, which we cited, a recent case where they found harmless error in this type of error. The Ohio Supreme Court had precluded mitigation in that case, unconstitutionally precluded it, and they went ahead and did a harmless error review, and it was the same type of review. It looked at that type of evidence and found it really wasn't significantly mitigating, and it compared it to the facts of the case. Right, but that's what I'm getting to my original question. It might be in the case where you say, look, there was kind of a mild childhood mitigation evidence presented, and you can say less subject to harmless error analysis. But here, it's a pretty substantial amount of evidence that's produced. So why do you think it's harmless error in this case? For the same reasons the trial court found. I mean, the trial court did find that McKinney had a very severe childhood upbringing, and that he was... But, Counselor, can I have you answer that question again? Assuming that there was Eddings error in this case, that means assuming that the trial judge improperly excluded the mitigation evidence. In that instance, how do we find that the error was harmless in this case? Because you can look at the mitigation and determine whether it had any effect on the sentence itself. So, for example, in this case, McKinney had... You can assume he had the child abuse and the severe childhood upbringing, but you look at the facts of the case. There were two murders. There was deliberate pre-planning throughout, and how that mitigation would have affected his conduct, behavior, character, record at the time of the murders. And the trial court went through all of the deliberateness and the murders that occurred and found that it really wasn't substantial mitigation to call for leniency. Why would we do that? Why isn't it the kind of thing to say, look, there's Eddings error. If that's where it comes out, we send it back to district court to do the factual weighing. Isn't that what we do? Send it to the district court? Yeah. If you find error? I mean, I'm assuming that's where we're on the analysis. If we find error and we decide it's not structural, why would we do the weighing ourselves? Why wouldn't we send it to the district court to do the first instance? Because you'd have to find whether it's harmless or not, and if you found it... That's right. Do the determination of harmlessness. If you found it harmful, then you would send the case back. If you found that it was harmful... No, but the question is, I think the question is exactly that. Who's going to decide whether it's harmless or not? And it seems to me they're arguing that we would do that here. I think he means when he says the district court, I think he means the superior court. No, no. I mean the district court. No, no. Well, in the Sixth Circuit case, the Sixth Circuit went through the harmless error analysis and found that it wasn't significant. So I think this court can do the harmless error analysis. That's right, but let's assume that we conclude that the error was harmful. Then the next step would be the case is reversed, but then the re-weighing would be done or the resentencing would be done in Arizona State Court. That's correct. The resentencing would be done in State Court. So here's my problem, is that we have the trial court saying this is making a finding that there is a significant problem with the childhood, significant evidence. If we conclude that he did not consider that because of Edding's error, or that he said, look, this is very important, but I can't consider it as mitigation because it didn't have a causal nexus. Why isn't that harmful error? I'm asking you to assume this hypothetically, because I can see from your brow you said, well, that's not true. No, no, and that's not what I was doing. I was trying to follow the logical extension. So if you find that this was harmful, it gets sent back. No, I'm sorry. I probably garbled the question. Getting back to my first question, we have the trial court saying this is significant evidence, but if we conclude that the trial court did not consider that as mitigation evidence because of Edding's error, why doesn't that by itself indicate that it was not harmless error, that it was harmful error that we need to reverse on? Well, that's what you would find if you actually found that. So if we conclude there's Edding's error, we have to reverse? Well, if you conclude there's Edding's error, then you have to find whether it was harmless or not. But in this case, since the trial court said that this was really horrific mitigating evidence, assuming there's Edding's error, then that would not have been considered, wouldn't we have to send it back? It would be sent back. Well, but what you're saying is, and I don't want to make your argument for you, but if you do a harmless error analysis, you're basically saying if the court found Edding's error here, it would have to be harmful. That's not what I'm saying. Well, that's what you were saying. I didn't mean to say that. No, if you found Edding's error, you wouldn't have to find it harmful. Well, in some cases we might not. We thought that the mitigating evidence that hadn't been considered was really not very weighty. But in this case, we have a finding from the trial court that this particular childhood abuse was really substantial. That's correct. Right. So in this case, it seems to me that if we find Edding's error, it has to go back. Not in every case, but perhaps in this case, because we have that decision from the trial court. And so if I'm wrong about that, I'd like you to correct me. Well, I think you'd still have to go through the harmless error analysis and find that that mitigation was precluded. One, that's on the merits. That's the Edding's error. Then you'd have to find that it was harmful, and you'd have to do that analysis. Okay, so stop right there, please, if you would. If we find Edding's error in this case, given that the trial court thought that what we're hypothetically deciding was omitted, unconsidered, mitigating evidence was really significant, how could we say that's harmless? You have to look at the facts of the case and the overall record to determine whether it's harmful. And we would do that? Yes, you can do that. And any of you would just do that under BRICS. And you would do that under BRICS. Let me ask a slightly different question. It seems to me that this could be structural error if, and this is a big if, trial counsel, defense counsel, understanding the strength of the Wallace rule that became the Ross rule that says childhood abuse in and of itself is not relevant, kind of pulled his punches on childhood abuse, knowing that it was going to be considered irrelevant. It seems to me that if the state rule that's followed by the trial results in what Edding's tells us is relevant evidence not being introduced, that sounds like structural error to me. How do we know, one way or the other, in this particular case, whether the full extent of the childhood abuse was introduced as evidence? Well, that's a really big if, and it's speculative. Yes, but take my if and I don't ask you to concede, but it strikes to me that that's at least a good argument for structural error if the state rule results in what we think is relevant evidence, what the Supreme Court tells us is relevant evidence, simply not being put into the record so we don't have an appropriate record to reveal as to whether or not there was harmless error because we can't look at the evidence because it's not there. Assume with me, don't concede, just assume that if the state law rule results in a lot of relevant evidence not coming in, so it's not in the record, assume that that's structural error. You don't have to concede. How do we know in this case whether or not there was significant evidence of childhood abuse that was not introduced? You wouldn't if all those things are out there. Doesn't that get back to the question? The counsel for the defendant said that he's not aware of any evidence they didn't put in, and then the federal defender said, well, but we can't know. He kind of, but counsel for the defendant said he wasn't aware of any evidence that wasn't put in. It's speculative. Yeah, we don't know what evidence wasn't put in. We don't know whether they put in all the evidence. Why isn't your answer they should have proffered it? Well, they should have. That's what happens. You proffer it, and you get turned down on the state law, and you argue that the state is wrong on the earnings. Then we know. There's nothing in this record, and getting away from the hypothetical, there's nothing in this record indicating that the Arizona Supreme Court ever had a rule that said you can't proffer evidence, you can't bring evidence regarding your character or record. No, it just had a rule that said it was irrelevant unless it was connected. There are cases that have that language. Yeah, Wallace and Ross. At the page cited in the Supreme Court opinion. That's correct. In fact, there is language in those cases. But when you look at the overall picture of Arizona law at the time, and its citing of Eddings and changing of the statute for Lockett, and two years before this appeal indicating that you have to consider all of the mitigation, there's nothing indicating that the Arizona Supreme Court had such a state rule. And if Arizona had such a state rule, we wouldn't have prevailed on a majority of these causal nexus cases. Isn't the simple answer that the burden is on McKinney as the habeas petitioner to establish that he's entitled to issuance of the writ, and that means he has to come forward with the evidence that was excluded, and he has none? That's correct. So we can't assume. We can hypothesize all we want, but the fact is he hasn't proffered any additional evidence. So we have to assume that all the childhood evidence is in. I'll say it this way. There may be a little bit more, but there's a lot of evidence already. There was a lot of evidence that this trial court heard, and the Arizona Supreme Court reviewed and found it wasn't significantly sufficient to call for leniency. Counsel, can I take you back to the trial record for the sentencing record for a moment? I'm looking at now the bottom of ER 1159, where the sentencing court talked about the childhood abuse evidence and indicated, however, as I've indicated, and then he goes on to find that there's no causal nexus to Mr. McKinney's conduct in this case. I read the reference, as I've indicated, to refer back to his finding regarding the PTSD evidence. Do you read that the same way? I do, and you can also read it, I mean, earlier in this particular transcript, that's what you're talking about? Yes. Yes. Because the sentencing court talked about the PTSD evidence, and he talked about it specifically in connection with Exhibit 3, which is the report that talked about the causal connection to the crime, right? And he made a certain finding, essentially, made a certain finding as to the PTSD, and then he goes on to talk about the child abuse evidence, and then he made a finding as to the child abuse evidence. So when he said, as I've indicated, the way I read it is that he's referencing back to his finding regarding the PTSD. Then my question is, do you read that the same way? I do, and you can also read it to reference his previous statement in the transcript on July 20th, where he did inform counsel that he did find that the causative factors with respect to PTSD were demonstrated by McKinney. Is that day two? Is that after he heard the two experts? Is July 20th day two? Yes, it's the second day after all the evidence is in and they're arguing. Thank you. But with respect to that particular quote, Judge Nguyen, you can look at, you can reference back to his finding in PTSD, but he also indicated that he didn't find it to be a substantial mitigating factor or that it didn't have a connection. So there's two findings, and one of them deals with the weight that he's placing on that mitigation. He didn't actually make a finding as to whether McKinney suffered from PTSD. He just said, assuming that he did. He didn't find one way or the other on the PTSD. He assumed that the PTSD, in the transcript of the special verdict, he assumed that the PTSD was proven. He just assumed it. He didn't actually make a finding saying that. He found himself all wound up in this predictive analysis report and sort of putting McKinney to the burden of showing that there was some independent other aspect that existed within this particular study, like organic brain damage that had to accompany the PTSD for it, in fact, to actually exist with respect to McKinney. I respectfully disagree with that reading. I think what he did was he took the PTSD, he assumed it was true, and then gave it a fact by looking at how this mitigation had any type of value with respect to this case. And to say that he only looked at Exhibit 3, which, by the way, in the prior transcript on July 20th, he actually found that those positive factors listed in Dr. Lewis's report, which was Exhibit 3, they were demonstrated, but he just didn't find them to be substantially mitigating. So, I don't think you can penalize the trial court for actually looking at and giving effect to mitigation that was presented by McKinney himself. But that, I see my time is almost up, but I think you can look at the language here to determine that the trial court actually did consider and weigh this evidence, and there was no constitutional violation. Any further questions? My time is very short. I would say that in the Fifth Circuit and in Arizona, the judicial gloss that precludes the review from taking place as opposed to the other circuits. Thank you. Very briefly on the question of structural error, I would direct the court for some guidance to the Supreme Court decisions post-Brecht. There have been four habeas decisions by the United States Supreme Court after Brecht, in which the court has reversed on Lockett-Eddings error without conducting a harmless error. When was the last time the Supreme Court announced an error of structural? I don't remember any in the last 20 years. Sullivan v. Louisiana, I think, would be 20-some years ago, would be, I think, the last. I don't think they have announced any others. And they've been very careful to say how parsimonious they are with those. That is correct, Your Honor, but they have also... One might even suspect they broke the mold. Let's hope not. This is a structural break. I think you start to say, counsel, post-Brecht, there have been four decisions. And there is one I would particularly like to direct the court's attention to, and that's the court's second decision in Penry, Penry 2 in 2001. In that case, there were two issues. One was a Fifth Amendment issue, and Justice O'Connor did apply Brecht analysis on the Eddings issue. She did not. And there was a reversal. Thank you, counsel. Thank you all for your arguments today. They were very helpful to us.
judges: Thomas, Kozinski, Wardlaw, Fletcher, Gould, Berzon, Tallman, Callahan, Bea, Christen, Nguyen